JOHN F. McGEE v. BOARD OF COUNTY COMMISSIONERS OF
HENNEPIN COUNTY.[1]

November 29, 1901.

Nos. 12,826—(177).

#### Eminent Domain—Laws 1897, c. 88.

Laws 1897, c. 88, so far as it relates to the establishment of a uniform
height of water in Lake Minnetonka, held to have delegated to the board
of county commissioners of .Hennepin county the legislative duty of
exercising the power of eminent domain, and to have imposed upon the
district court for that county the judicial function of determining
whether such improvement was for a public use.

#### Same—Action of District Court.

Under Laws 1897, c. 88, as applied to the Lake Minnetonka improve-
ment, it is held that the provision of such act authorizing the district
court upon presentation of a petition for the appointment of appraisers
if "it shall be satisfied that the public interests will be advanced," is
not to be construed as imposing legislative powers upon the judiciary,
but as limited to the judicial function of determining whether such
improvement was a public use.

#### Changing Height of Dam.

Whether Laws 1897, c. 88, § 6, authorizing the district court to change
the height of the dam as established by the board of commissioners,
imposes legislative duties upon such court, and is invalid, quære.

#### Const. Art. 3, § 1—Minnetonka Lake Improvement.

Notwithstanding the statute authorizes the court to change the height
of the dam, the act is in other respects complete, and such provision
may be eliminated from it without detriment thereto; and it follows that
the exercise of the power of eminent domain in the Minnetonka Lake
improvement under the statute referred to was not in violation of sec-
tion 1, article 3, of the constitution, since it does not necessarily impose
legislative duties upon the judiciary in order to effectuate such improve-
ment; and held, that no illegal powers were exercised therein in this
case.

#### Assessment upon Shore Lots.

The provision in Laws 1897, c. 88, for assessments upon shore lots for

[1] Reported in 88 N. W. 6.

the purpose of paying for local improvements, considered, and *held* to have been authorized by section 1, article 9, of the state constitution, as amended in 1881, which provides special assessments for such purposes without reference to the cash valuation of the property upon which the burden is imposed.

Action in the district court for Hennepin county to recover the amount of a local assessment levied upon land of plaintiff pursuant to Laws 1897, c. 88, for the improvement of Lake Minnetonka, said assessment having been paid into the county treasury under protest and for the purpose of effecting a transfer of said property. From an order sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*Wm. A. Lancaster,* for appellant.

*Fred. H. Boardman* and *C. L. Smith,* for respondent.

LOVELY, J.

Appeal from an order sustaining a demurrer questioning the sufficiency of the complaint, which, in apt and appropriate terms, alleges a local assessment upon shore lots of Lake Minnetonka to pay their proportionate share for the improvement made under Laws 1897, c. 88, considered on other grounds by this court in Carpenter v. Board of Co. Commrs., 56 Minn. 513, 58 N. W. 295, and State v. District Court, 83 Minn. 464, 86 N. W. 455.

This pleading, without doubt, raises the question of the validity of such assessments, which, upon the claim that they were involuntarily paid, under the rule of State v. Nelson, 41 Minn. 25, 42 N. W. 548, may be recovered, if illegal, which is the question presented by the demurrer. Plaintiff insists that the demurrer should have been overruled for the reason that the Minnetonka improvement authorized by Laws 1897, c. 88, under which its waters have been raised and maintained at a uniform height, is in violation of the organic law in two essential respects: (1) That by such act legislative duties were imposed upon the district courts of this state, contrary to section 1, article 3, of the state constitution; (2) that the enterprise was not a local improvement for which special assessments could be made under the terms of section 1, article 9,

of the state constitution, as amended in 1881. These two grounds of attack may be considered in the order above named.

1. The alleged vice of chapter 88 will be found in section 6 of the act, granting the district courts authority to pass upon the expediency of a public improvement, as well as the quantity of land to be taken to accomplish it, which are questions of legislative policy exclusively, with which appellant claims the judicial powers vested in courts have no right to interfere.

Before coming to the precise terms of the statute which subjects the alleged obnoxious provisions of section 6 to this criticism, it is best to summarize the previous sections of the act. Section 1 provides that the board of county commissioners of any county in which all or the major part of any navigable lake is situated, is authorized for the improvement of navigation or the promotion of public health and welfare to establish a uniform height at which the water in such lake may be maintained. It is further provided in subsequent sections that, when the board shall have adopted a resolution establishing the uniform height of water, it shall designate the lands to be taken to acquire a dam, if necessary, across any stream on or near the shores of any lake, and designate the property which it shall require to carry out the purpose of the act, also to have a map thereof made; this map to be filed with the clerk of the district court, with a petition setting forth the height at which it is proposed to maintain the water, and designating the lands and property to be taken, as well as the names of the owners, etc., with a prayer for the appointment of three competent and disinterested freeholders to appraise and award compensation to be made to those who suffer damages. The board is then required to give notice to all persons interested of the intention to take the land, and application to the court for the appointment of the appraisers.

Section 6 of chapter 88, containing the provision of which plaintiff complains, provides that:

"At the time and place designated in said notice, or at the time and place to which any adjournment may be directed by said court, said court, upon the presentation of such petition and map with satisfactory proof that said notice has been served, as hereinbe-

fore provided, shall proceed to hear and determine such petition. * * * Upon said hearing, *if said court shall be satisfied that the public interests will be advanced* by the establishment and maintenance of the water in such lake at said height, *or at such other height as said court may determine,* and that the lands and property designated to be taken *or purchased* as herein provided, or both, or such portion thereof as said court may determine are necessary therefor, said court shall make an order to that effect * * * and shall appoint three competent, disinterested freeholders * * * to determine and award the compensation to be made * * * for taking said lands and property."

The italics are adopted from appellant's able brief to indicate the pith of his contention, which is thus pertinently indicated. In subsequent sections it is provided substantially that the board may, after the action of the court, abandon the contemplated improvement entirely; also that the district court shall appoint three appraisers, who, when the amount needed for the improvement is ascertained, shall pass upon the special benefits, if any, to each particular tract, and assess thereon such sum as shall be deemed its just proportion, respectively, of the total cost of the improvement. The report of the appraisers, if confirmed by the court, and a copy thereof delivered to the county auditor, authorizes the amount assessed against each tract to be included in the next general tax list, so that its collection may be enforced as other taxes.

Plaintiff first attacks the act upon the grounds that the italicized sentences of section 6, which provide that upon the hearing by the court the order appointing the appraisers is to be made when the "court shall be satisfied that the public interests will be advanced" by the maintenance of the water at the height determined upon, and to change the height established by the board, are invalid, upon the ground that such obligations include questions of legislative policy, rather than judicial duty. In other words, that the district court, instead of the board of commissioners, to whom legislative authority to exercise that right has been delegated, is empowered to execute functions in excess of its authority, in contravention to the fundamental law, which divides the powers of the government into three distinct departments,—legislative, ex-

ecutive, and judicial; forbidding any person belonging to or constituting one of these departments to "exercise any of the powers properly belonging to either of the others." Const. art. 3, § 1.

There is no doubt that the authority to inaugurate and adopt a scheme for public improvement, whereby private property is to be taken for public use, which is designated the "sovereign right of eminent domain," is a legislative attribute, to be determined upon grounds of legislative policy. The leading authority in this state upon which counsel relies to support his views and their application to this case is State v. Simons, 32 Minn. 540, 21 N. W. 750. This decision very appropriately delineates and distinguishes the essential co-ordination of legislative and judicial powers, asserting their constitutional independence of each other, which is necessary to the very existence of free government. It was attempted by the legislative enactment in that case to authorize the district court, upon the presentation of a petition by freeholders, to incorporate a municipality, having the usual powers of such organizations to exercise governmental duties. It was held void.

Such attempt of the legislature to devest itself of its prerogatives and impose the same upon the courts was so clear as to be apparent upon the face of the act itself, but in many instances of the exercise of the power of eminent domain the line of demarkation between legislative and judicial duties is much more obscure. The necessary improvements of progress effectuated by the exercise of that power require for their origin the determination of the expediency of the improvement, as well as the quantity of private property to be subordinated to such purpose, and perhaps other matters of legislative policy; but it is equally as clear that the authority to determine whether the use is public, as distinguished from private, is a judicial duty. Upon that question the right of the citizen is not left to the final judgment of the legislature. This distinction is not questioned by appellant, and it cannot be doubted, either, that there necessarily must be in the exercise of the power of eminent domain a point where there is no incongruity between legislative and judicial functions. Such are cases where the legislature may impose upon the judiciary the ancillary duty of deciding questions of fact; for questions of fact

which are essential may not sometimes easily be distinguished from what may involve, in the ordinary course of justice, solely legislative or solely judicial duties, which coalesce in practice.

To further illustrate: While it would be competent for the legislature to ignore the judicial power entirely in providing for some work of improvement, and delegate the duties of taking the property and awarding compensation entirely to a body having no judicial attributes, yet the question whether such improvement is a public use, or the means of awarding just compensation, presents issues upon which the courts might be the final arbiters; and, again, the question whether the public use existed might depend upon facts involving the consideration whether the improvement would be adequate for the purpose for which it was intended.

In either case the legislature itself might determine such question, or through a designated body might impose upon the courts the duty to determine the essential facts in some proper and appropriate method. State v. Ensign, 55 Minn. 278, 56 N. W. 1006; City of Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117; State v. Rapp, 39 Minn. 65, 38 N. W. 926; State v. District Court, supra.

"It is not every grant of powers, involving the exercise of discretion and judgment, to executive or administrative officers, that amounts to a delegation of legislative power. The difference between the departments undoubtedly is that the legislative makes, the executive executes, and the judiciary construes, the law; but the maker of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate and difficult inquiry, into which a court will not unnecessarily enter." State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 299, 37 N. W. 782.

As pertinently expressed in a later case by Justice MITCHELL:

"The precise line of cleavage between judicial and ministerial functions never has been, and never can be definitely located. There are many duties which may be either the one or the other, depending upon the officer or body performing them, and the effect to be given to the action or determination of such officer or body.

When duties of this ambiguous or equivocal nature are imposed upon a judicial officer or tribunal, to whom none but judicial duties can be constitutionally assigned, the doubt should be solved in favor of the validity of the statute, and the duties held to be judicial, and the presumption indulged in that the legislature intended them to be performed in a judicial manner." Foreman v. Board of Co. Commrs., 64 Minn. 371, 67 N. W. 207.

Bearing in mind the distinctions pointed out in the cases referred to, as well as the character of the duty imposed upon courts when such distinctions arise in practice, we recur to the first ground of objection to the language of section 6 in the Minnetonka improvement act, which provides that, when the petition is presented, "if said court shall be satisfied that the public interests will be advanced by the establishment and maintenance of such water in such lake at said height," it shall proceed further. It is strenuously urged that this language clearly makes further proceedings in the condemnation of the property dependent entirely upon the determination of the question of legislative policy by the court,—whether the improvement shall in fact be made at all. If this conclusion follows, then it affects the validity of the entire act, but we are not satisfied that it does necessarily follow.

A cursory reading of this language may suggest the view adopted by appellant, but we must not eliminate from the situation presented the question of public use involved in the exercise of the power of eminent domain. We must go further, and inquire into the character of the improvement; for, if the public use is to be determined by the court, such use may depend upon a consideration of disputable facts,—as, for instance, whether the establishment of the uniform height of water to be maintained is adequate for the only purpose upon which the right to take private property for public use can, under the precise terms of the statute, be made to depend, viz., the improvement of navigation and the protection of public health. Upon these questions, which present issues of fact, involving the utility of the improvement itself, it would seem proper, if not necessary, for a court to hear evidence and determine the disputed facts. In doing so, the court does not trench upon legislative functions, but aids the

legislative power by its determination that it is consonant with the protection of "public health" or "improvement of navigation"; and therefore the doubt, if any, which arises upon the construction of the language objected to, should, under the rule in Foreman v. Board of Co. Commrs., supra, be resolved in favor of the validity of the statute.

That the language referred to may be applied to the proper performance of a judicial duty, we have no doubt. The words of this law are not different from other acts providing for the exercise of similar duties. In G. S. 1894, c. 34, tit. 1, relating to corporations empowered to take private property for public use (G. S. 1894, § 2608), and authorizing the condemnation of land for railroad and other purposes, which has been in force for many years without cavil or question, it is provided that "the court shall hear the proofs and allegations of the parties, and if  *  *  *  satisfied that the public interests require the prosecution of such enterprise," it may appoint the commission to award compensation, etc.

It is not easy to make a distinction between the language in chapter 88 we have considered and that quoted from the condemnation law last cited, yet we apprehend it would surprise and startle the many members of the legal profession in this state who have availed themselves of the latter statute to bring into operation the power of eminent domain to suggest that it conferred legislative power upon the courts. The state drainage law provides for the institution of a ditch when the county commissioners decide that it will be "of public benefit or utility or conduce to the public health, convenience or welfare." The determination of the board of commissioners is not in this respect conclusive. An appeal may be taken to the district court, and that question is there finally decided. G. S. 1894, § 7793. Whenever appeal is taken, the action of the commissioners may be sustained in whole or in part. G. S. 1894, § 7804. This law is a constitutional enactment. Dowlan v. County of Sibley, 36 Minn. 430, 31 N. W. 517; Lien v. Board of Co. Commrs., 80 Minn. 58, 82 N. W. 1094.

It seems to us quite easy to reconcile the judicial duties imposed by the general condemnation statute, as well as in the state drain-

age law, with the undoubted right of the courts to determine the question of public use, and to say whether the plan adopted by the legislative body will be, as a question of fact, conducive to the end to be accomplished. It is not necessary to go further than this construction, which is consistent with reason, to support this feature of the law in question. This characteristic clearly distinguishes this provision of this statute from that authorizing the incorporation of villages, held unconstitutional in State v. Simons, supra, for the reasons indicated in that case.

Counsel for appellant contends that the cases sustaining the drainage law have no application, for the reason that the questions which the court is required to determine therein arise upon appeal; but it seems very clear to us that it makes no difference, in considering the exercise of constitutional rights and powers, whether they are imposed directly in the first instance, or through legal machinery which terminates in appeal. Providing the duties imposed upon the courts by statute are strictly legislative, they are unlawful, whether exercised in the presentation of a petition or upon appeal therefrom. Clearly there can be no charm about the machinery of an appeal that dispenses with the evil, if it exists.

It is claimed, however, that the imposition on the courts by section 6 of this act of the duty to change the plan adopted by the board, which is explicitly conferred by the power to raise the uniform height adopted by the resolution of that body, goes much further than the point we have considered, and that the expediency of any improvement, as well as the quantity of land necessary to be taken, are questions clearly of legislative policy; from which it would follow that provisions of the statute authorizing the court to change the uniform height to which the dam is to be maintained, after that question has been determined by the board of commissioners, would be in excess of the constitutional authority imposed upon courts, and as much a violation of the powers therein conferred in that respect as were prohibited in the case of State v. Simons, supra. Conceding, without deciding, that the contention of appellant's counsel is, in this respect,

sound, we are not prepared to follow it to the conclusion that such invalidity renders the statute ineffectual in other respects.

The duty of courts to apply a presumption in favor of the constitutionality of a statute cannot be questioned. It is our duty to construe every statute so as to give effective force to the intent of the body enacting it, if we can, and we may eliminate unnecessary words from the act in order to sustain its validity. Woodruff v. Town of Glendale, 26 Minn. 78, 1 N. W. 581; 6 Am. & Eng. Enc. (2d Ed.) 1088. A careful consideration of the act in question leads to the conclusion that it may apply and be enforced, so far as the judicial duty of the courts is concerned, by simply ignoring the alleged illegal provision referred to, which was done in this case. The district court of Hennepin county passed upon the petition presented, approved of it, and made no interference whatever with the plan proposed by the board of commissioners. If a court may disregard unconstitutional requirements in a statute where it is sufficient without them for the remedy, it seems to us that it could easily do so here. The result is that, if the court could not change the plan of the commissioners, it did not do so. It follows that the duties imposed by the statute were legally exercised within the limits expressed above, by the court, who adopted and enforced its valid provisions to secure the Minnetonka Lake improvement.

2. The remaining question on this review involves the means by which chapter 88 provides for the payment, through special assessments, of the cost of the improvement. It is urged that the amendment of 1881 to section 1, article 9, of the state constitution, does not apply to this improvement, for the reason that the same is not of a local character, in the sense contemplated by such amendment. The act provides for the establishment of a uniform height of water in the lake, in order "to improve the navigation or to promote the public health or welfare." As appears from the complaint, both grounds were made the basis of the petition upon which the court acted in the appointment of appraisers, and upon whose report the assessments now objected to were made. It will be readily conceded that, no distinction having been made in the

grounds upon which the improvement was sought, if either ground naturally and reasonably presented such elements of a local nature that it is apparent that it affects the inhabitants of the immediate vicinity, rather than the general public, special assessments, as in this case, may be sustained, without reference to the cash valuation of the property involved. This is clearly within the letter of the amendment of 1881.

The drainage of wet lands has been held to be a subject of local character, which would justify assessments upon the property immediately benefited. Dowlan v. County of Sibley, supra. And as expressed by Justice BROWN in a late decision:

"In all cases where such laws are authorized, the further power and authority to provide for assessing the cost and expense of the improvement against the lands benefited follow as a natural result. The power to so assess the cost of the improvements against lands benefited is a necessary and proper incident to the exercise of the power to make the improvement. And a statute providing therefor is not open to the constitutional objection that it is unequal taxation." Lien v. Board of Co. Commrs., supra.

The condition of public health was distinctively made one of the grounds for special assessments in the drainage act to which attention was given in the decision referred to, and we see no reason why that consideration is not potential in the case of the Minnetonka dam enterprise. If public interests of a local character can be affected by the drainage of wet lands, we see no reason why the raising of water over low and marshy places near the shores of an inland lake may not be necessary to prevent the spread of diseases, and required for the protection of health in that vicinity, which would authorize special assessments to pay for the same, under the constitutional amendment, and may be imposed by the county as a municipal corporation. Dowlan v. County of Sibley, supra.

Whether the improvement of Lake Minnetonka, or any other lake in the state, for the purposes solely of navigation, would be of such general utility, as distinguished from local benefits, as to except such improvement from the amendment of 1881, under the rule of Sperry v. Flygare, 80 Minn. 325, 83 N. W. 177, we do

not decide, but hold, for the reasons stated, that the assessments in this case were valid.

Order affirmed.