JAMES P. PETERSEN et al., Appellants, v. VICTOR V. SORENSEN et al., Appellees.

DRAINS: Repairs—Nonnecessity for Petition. No petition is neces-
1    sary in order to initiate proceedings for the *repair* of an existing drainage improvement.

DRAINS: Original Construction (?) or Repair (?) Improvements on
2    an existing drainage improvement will not be declared to constitute *original construction* simply from the fact that the board, in its record providing for the work, used terms *broad enough* to embrace original construction. *The work actually done will control on the question whether the work was original construction or repair.*

DRAINS: Repairs—Excessive Cost of Repairs. The fact that the cost
3    of improving an existing drainage improvement is far in excess of the original cost of construction does not necessarily stamp the improvement as original construction.

DRAINS: Construction—Insufficient Notice to Bidders—Waiver. Prop-
4    erty owners are estopped to question the sufficiency of a notice to

bidders when, after the contract is let, they grant a right of way for the improvement, and specifically waive damages and notice of a change in location and of the appointment of appraisers.

**DRAINS: Appeal as Exclusive Remedy.** Appeal is the exclusive remedy for the purpose of reviewing the failure of the board of supervisors, in improving an existing ditch, (a) to follow a proper classification of the lands, (b) to include all the lands in the assessment, or (c) to levy assessments according to benefits.

**STATUTES: Construction—Location of Statute in Code.** The mere fact that a legislative enactment on a *particular* subject-matter is printed in a chapter of the Code along with other pre-existing statutes does not in any manner broaden its applicability.

**INJUNCTION: When Writ Lies—Drainage Proceedings.** Injunction will not lie to review mere *irregularities* of the board of supervisors in carrying on a drainage improvement.

*Appeal from Clinton District Court.*—A. J. HOUSE, Judge.

NOVEMBER 15, 1921.

ACTION in equity to enjoin the collection of drainage taxes. Judgment in the court below dismissing plaintiffs' petition. Plaintiffs appeal.—*Affirmed.*

*George F. Skinner, W. H. Carroll, F. L. Holleran,* and *J. D. Carstensen,* for appellants.

*Wolfe, Wolfe & Claussen* and *E. L. Miller,* for appellees.

STEVENS, J.—I. A somewhat detailed statement of the record is essential to a full understanding of the questions to be decided upon this appeal. The Goose Lake Drainage Ditch was established by the board of supervisors of Clinton County in 1895, and constructed at a cost of approximately $10,997.87. In course of time, the ditch became filled with earth and debris, and on April 21, 1919, the board of supervisors directed the county auditor to advertise for bids for reopening, deepening, enlarging, and widening the ditch. The auditor immediately caused notice to be published, and on May 5, 1919, the bid of the Clark Construction Company was accepted by the board, and on June 2d, a contract was entered into, for the cleaning,

deepening, and widening of the ditch. The contemplated improvement was completed at a total cost of $29,006.25. On June 2d, commissioners were appointed by the auditor, to inspect and classify the lands to be benefited by the deepening and widening of the ditch, and to make an equitable apportionment of the cost of the improvement. On June 30th, Benton K. Anderson, a civil engineer, and one of the commissioners, reported to the board of supervisors that, on account of the debris that had accumulated in the ditch, the cost of the improvement would be much greater than originally estimated, and recommended a change in the course of the ditch. On July 7, 1919, the said engineer filed a further report, estimating the total yardage to be removed at 54,175.3 cubic yards. On July 11th, all of the plaintiffs herein, except James P. Petersen, caused a petition signed by them to be filed, representing that a portion of the old ditch had become completely filled, and that a new ditch a few rods distant had been excavated by private contribution, and asking that the portion of the old ditch that had become completely filled, be abandoned, and that the new improvement intersect with and follow the course of a private ditch dug by plaintiffs et al. years before, a few rods distant from the old ditch. This petition was favorably acted upon by the board, and by appropriate resolution the change was made. The report of the commissioners appointed to classify the lands benefited by the improvement for assessment was filed September 30, 1919. Due notice thereof and of the proposed assessment was served upon all parties entitled thereto, as provided by law. In due time, plaintiffs appeared, and separately filed objections to the classification and proposed assessment, and at the same time, separate general objections were filed thereto by their attorney.

The grounds of the objections urged by plaintiffs were, in substance, that the proposed assessment exceeded the benefits conferred; that at least part of appellants had contributed a designated sum to defray the expenses of the private ditch, and asked that the amount so contributed be credited upon the assessment; and that some of the lands proposed to be assessed were not assessed for the original cost of the improvement. The plaintiff Petersen objects upon the further ground that he did not consent to the use of the private ditch, and that the board of

supervisors had no right to appropriate the same as a part of the improvement without his consent, and assess him for a portion of the cost of the improvement as a whole.

Before proceeding to a discussion of the propositions relied upon by appellants for reversal, it may be well to make a brief historical and general statement of the drainage laws of this state. The first enactment of the legislature seeking to provide a system of drainage for lands rendered untillable by swamps, overflow, etc., appears as Chapter 2, Title X, of the Code of 1873. The twenty-sixth general assembly amended Chapter 2, Title X, of the Code of 1873, by adding what are now Sections 1975 to 1989, inclusive, of the Code of 1897, by authorizing counties in any case where the United States may have undertaken or might thereafter undertake the building of a levee along or near the bank of a navigable stream forming a part of the state boundary, to aid in procuring the right of way and in maintaining the levee and in providing a system of internal drainage made necessary or advisable by the construction of such levee, whenever, in the judgment of the board of supervisors, the work would be conducive to the public health, convenience, or welfare. This act was amended by Chapter 83, Acts of the Thirty-first General Assembly, and Chapter 93, Acts of the Thirty-second General Assembly. Chapter 2, Title X, of the Code of 1873, as amended, appears under the same chapter and title in the Code of 1897.

On January 12, 1904, this court announced its decision in *Beebe v. Magoun,* 122 Iowa 94, holding that Section 1946, Chapter 2, Title X, Code, 1897, in so far as "it authorizes the estimation of benefits to lands not abutting on a ditch, and through which it is not to be excavated, and the levy of taxes accordingly for such improvement without notice to the owner, is a clear and palpable invasion of the fundamental law forbidding the taking of private property without due process of law."

Whereupon, Section 1946 was amended so as to overcome the constitutional objection thereto, and Sections 1946-a to 1946-e, inclusive, 1913 Supplement, were enacted by the thirtieth general assembly, which also enacted Chapter 68, which is found in Chapter 2-A, Title X, of the Supplement, providing that:

"The provisions of this act shall be construed as an inde-

pendent procedure additional to Chapter 2, Title X, of the Code and Supplement, relating to the location, establishment, and construction of levees, drains, ditches, and watercourses, and shall not be held to repeal any of such provisions." Section 1989-a47.

This section as quoted above is as amended by Chapter 84, Acts of the Thirty-first General Assembly. So that our statute contains two chapters relating to drainage, and providing two methods whereby agricultural lands requiring it may be drained. The legality of the original establishment of the old Goose Drainage Ditch is frankly conceded by appellants.

We come now to a consideration of the propositions upon which appellants rely for reversal. The principal contentions of counsel, as we understand them, are: (a) That the character of the improvement is that of original construction, and not repair work; (b) that same could not be undertaken under either Chapter 2, Title X, or Chapter 2-A, Title X, of the Code, without filing a petition and otherwise complying with the law relating to the establishment of drainage ditches or districts; (c) that the notice to bidders was fatally defective, and did not comply with the requirements of Section 1989-a8, Chapter 2-A, Title X, of the Code Supplement; (d) that, if the improvement be classified as repair work, the board of supervisors wholly failed to follow the procedure prescribed, and therefore the board of supervisors did not acquire jurisdiction to receive bids, to enter into a contract for the work, or to lay an assessment upon the lands of plaintiffs for any portion of the cost thereof; (e) that the tax was laid upon only about half of the land assessed for the cost of the original improvement, and that same should have been based upon the original classification, as required by Section 1946-b, Code Supplement, 1913; (f) that, under Section 1984 of the Supplement to the Code, the board of supervisors could not levy an annual assessment against plaintiffs' lands in excess of 50 mills on the dollar; (g) that, as the board of supervisors acted wholly without authority, and in excess of its jurisdiction, the alleged assessment against the lands of plaintiffs is wholly void, and therefore the collection thereof may be enjoined.

Necessarily, the proceedings for the establishment of the Old Goose Lake Drainage Ditch were under Chapter 2, Title

X, of the Code; and it is quite clear that the proceedings of the

1. DRAINS: re-
pairs: non-
necessity for
petition.

board of supervisors of which appellants complain, were undertaken in pursuance of the provisions of Section 1946, Code Supplement, 1913. So far as material and applicable to the questions before us, this section is as follows:

''When any levee, ditch, drain, or change of direction of any watercourse shall have been located and established, as provided in this chapter, or when it shall be necessary to cause the same to be repaired or reopened, the auditor shall appoint three persons, one of whom shall be a competent civil engineer, and two who shall be resident freeholders of the county, not living within the township or townships where the improvement is or is to be located, and not interested therein or in a like question, nor related to any party whose land is affected thereby, who shall within twenty days after such appointment personally inspect and classify as 'dry,' 'low,' 'wet,' or 'swamp' all the land benefited by the location and construction of the improvement, or the repairing or reopening of the same, and shall make an equitable apportionment of the cost, expenses, cost of construction, fees, and damages assessed for the construction of any such improvement, or of repairing or reopening the same, and make report thereof in writing to the board of supervisors and file the same with the county auditor, who shall immediately thereafter fix a time for hearing objections thereto before the board of supervisors. * * * When the day set for hearing has arrived, the board of supervisors shall proceed to hear and determine all objections made and filed to said report, and may increase, diminish, annul, or affirm the appointment made in said report or any part thereof, as may appear to the board to be just and equitable, which apportionment shall be assessed among the owners of the land along or in the vicinity of such improvement and to be benefited thereby, in proportion to the benefit to each of them, and levied upon the lands of the owners so benefited in said proportions, and collected in the same manner as other taxes are levied and collected for county purposes.''

No petition of a majority of the property owners residing in Clinton County and owning land abutting upon the proposed improvement and asking that the ditch be repaired and re-

opened was filed with the board of supervisors, and none was necessary. *Yeomans v. Riddle*, 84 Iowa 147; *Gray v. Anderson*, 140 Iowa 359; *Munn v. Board of Supervisors*, 161 Iowa 26.

II.   Much stress is laid by appellants upon their contention that the improvement did not contemplate merely the repair or reopening of the ditch, but was, much of it, original construc-

2. DRAINS: origi-
nal construc-
tion (?) or re-
pair (?)

tion; that the cost thereof was nearly three times the cost of the original improvement; that the board of supervisors ordered the ditch reopened, repaired, widened, and deepened; and that the ditch was made wider and deeper than before. We have made no effort to compute the original yardage, from the figures stated, but it was necessarily very much greater than the yardage removed under the later proceedings. The cost of the original excavation was 7¾ cents and 8 cents per cubic yard; whereas, the cost of the later excavations was 52½ cents per cubic yard, with 20 cents for leveling the spoil banks.

The proceedings of the board of supervisors reveal that the nature and character of the proposed improvement were variously, and perhaps carelessly, stated in its proceedings. For example, the resolution directing the auditor to publish notice for bids stated the purpose to be "to reopen, deepen, enlarge, and widen the ditch." The notice of the auditor to bidders used the words "for deepening and widening." The resolution of the board accepting bids recited that it was for "repairing and reopening." The contract for the work was "for cleaning, deepening, and widening." The resolution of the board directing the auditor to appoint appraisers used the words "repairing and reopening." The commission issued by the auditor to appraisers stated that the proposed improvement was the deepening and widening of the ditch. The undisputed evidence, however, is that the original ditch was carefully staked out, and that all excavations made under the contract for cleaning, deepening, and widening the ditch were made inside of the stakes. No testimony was introduced tending to show that the excavation extended below the grade of the original improvement. It is true that a change was made in the course of the ditch, but this was done upon the petition of plaintiffs, except Petersen, and was for the purpose of avoiding expense, and perhaps because it

would increase the efficiency of the improvement. At the time appellants petitioned the board of supervisors to change the course of the ditch, so as to intersect and follow the line of their private ditch, they knew the engineer's estimate of yardage, as well as the price agreed upon for the work. They testified, however, that they were induced to sign the petition asking for the change and waiving statutory notices, by representations that a saving of $15,000 in the cost of the improvement would result. The record, however, discloses that the saving was only about $3,000.

It will be observed that Section 1946 confers authority upon the board of supervisors both to locate and establish a levee, ditch, drain, or change in a watercourse, and to repair and re-open same. So far as the evidence shows, nothing else was contemplated by the board of supervisors or done under their direction. It is true that, in determining whether the work is repair or original construction, the cost may be taken into consideration. *Bloomquist v. Board of Supervisors,* 188 Iowa 994. It cannot, however, in this case be given greater weight than as a circumstance throwing light upon the question whether it was, in fact, repair work. The cost per cubic yard for excavating, under the contract to repair and reopen the ditch, was at least 6½ times greater than the cost of originally excavating the ditch.

3. DRAINS: repairs: excessive cost of repairs.

Before the change in the course of the ditch was made, upon the petition of appellants, the engineer reported that the ditch was filled with earth and debris, which would be difficult and expensive to remove. As the record fails to show that the original ditch was widened or deepened, or that anything more was done than to repair and reopen the same, we cannot hold that the authority conferred by Section 1946 of the Code was not properly observed and carried out by the board of supervisors. The board manifestly, while using too many words, always had the repair and reopening of the ditch in mind.

III. In so far as the contentions of appellants are based upon the failure of the board to observe the provisions of Chapter 2-A, Title X, of the Supplement, they are without merit. The proceedings were not under this chapter. The notice to bid-

4. DRAINS: construction: insufficient notice to bidders: waiver.

ders was sufficient, and fully met the requirements of the statute, although it did not comply with Section 1989-a8 of the Code Supplement, 1913. Furthermore, appellants, except Petersen, specifically waived notice of the change in location of the ditch, and of the appointment of appraisers or commissioners to assess damages, waived a release of claims for damages, and specifically granted the right of way for the ditch. This was after the contract had been let by the board of supervisors. Plaintiffs are in no position to assert that the notice to bidders was fatally defective.

IV. It is further urged by appellants that the assessment was not laid according to the original classification, as required by Section 1946-b of the Supplement. As before stated, Section 1946 was held to violate the due process clause of the Constitution. This section was later amended so as to meet the constitutional objections, and its constitutionality was sustained by this court. *Ross v.. Board of Supervisors*, 128 Iowa 427. Sections 1946-a to 1946-e, inclusive, were obviously enacted by the thirtieth general assembly in order that improvements either not completed or, if completed, not fully paid for, might be completed, and taxes legally levied to defray the expense thereof. While the assessments levied upon the lands of appellants and others for the original cost of the ditch were, in part at least, unconstitutional and void, they were all paid prior to the announcement of the decision of this court in *Beebe v. Magoun*, supra.

5. DRAINS: appeal as exclusive remedy.

Whether the provisions of Section 1946-b, requiring all future levies for the improvements referred to in the preceding sections to be apportioned on the basis of the original classification, are applicable, we are not called upon at this time to decide. Code Section 1947 provides that:

"An appeal may be taken to the district court from the order of the board of supervisors in fixing the assessment upon lands, in the same manner appeals may be taken in the location of roads, and within the same time. But on such appeal it shall not be competent to show that the lands assessed were not benefited by the improvement."

If an improper classification were adopted, or if lands properly assessable were omitted from the levy, or if the as-

sessment was not according to benefits, or for other reasons was inequitable, the remedy by appeal was sufficient and exclusive. This remedy having been provided, it must be followed. If the board of supervisors acquired jurisdiction to levy assessments, but there was an irregularity or illegality in the proceedings, relief can only be had upon appeal, and no ground for injunction relief existed. The same is true of appellants' objection that the assessment was laid upon only a portion of the land benefited by the improvement.

V. Appellants' contention that the board of supervisors could in no event, in any proceeding not initiated by the filing of a petition, levy an assessment for the purpose of maintaining or repairing ditches under Section 1986, Code Supplement, in excess of 50 mills on the dollar, is not well founded. This provision of the statute applies only to levees erected by the United States, and to systems of drainage referred to in Chapter 46, Acts of the Twenty-sixth General Assembly. It is true that Chapter 46, Acts of the Twenty-sixth General Assembly, is codified under Chapter 2, Title X, of the Code; but it is under the subtitle "United States Levees." It is quite clear that the 50-mill limitation is applicable only to the improvement constructed under the provisions of the subtitle.

6. STATUTES: construction: location of statute in Code.

Appellants concede that an injunction will be granted only to restrain the collection of a void assessment. The assessments complained of are void only if the proceedings of the board were unauthorized and without jurisdiction. The proceedings were begun under a valid statute; and, save for some possible irregularities or illegality in the subsequent proceedings which might render the assessments voidable or inequitable, and which could only be corrected on appeal, they must be permitted to stand. We have no power in this proceeding to review the proceedings of the board, or to correct inequalities in assessments. No reason is given for omitting from assessment a large part of the land assessed for the original cost of the ditch, nor is the reason therefor material to our present inquiry. Manifestly, no ground for injunctive relief is disclosed by the record.

7. INJUNCTION: when writ lies: drainage proceedings.

It follows, therefore, that the judgment dismissing plaintiffs' petition must be and is—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.