D. H. SEABURY et al., Appellees, v. W. R. ADAMS et al., Appellants.

No. 39464.

MAY 7, 1929.

*Roy E. Havens,* for appellants.

*P. E. Roadifer,* for appellees.

KINDIG, J.—During the year 1913, there was organized in Harrison County a drainage project known as Upper Soldier Drainage District No. 1. It contained two parts, a main ditch  and a lateral known as "A." Those ditches therein were duly and timely constructed in a northerly and southerly direction, and the cost of the main ditch was spread over all the property within the district, according to an established ratio of benefits; while the expense of the lateral was only partly assessed to the lands especially benefited thereby, and the balance thereof was taxed against all the land in the district, regardless of the classification of benefits. Whether right or wrong, that is the way it was done. Here it is important to note that the Chicago & Northwestern Railway right of way crosses the main ditch where the lateral joins it; so the north end of the improvement was on the west side of the railroad, and the south part to the east thereof. Said portion north of the railroad is the lateral, and that south thereof is the main ditch.

On May 8, 1925, the board of supervisors passed a resolution authorizing repairs on Lateral A at a cost of $3,512.54. For the purpose of those repairs, a new assessment was made by the board, according to the ratio of the original benefit classification relating to the lateral. Accordingly, the auditor spread the entire cost thereof against the lands named ·as benefited by the lateral, consistent with the established standard of classification. In other words, the new assessment was to be in harmony with the fixed ratio of benefits for the lateral, rather than against the other property within the district, which, as shown by the original classification, was benefited by the main ditch only.

Appellees have land included within the territory benefited by the lateral. Hence, the new assessment affects their realty. Consequently, the present injunction was sought by them to prevent the collection of that tax; and because the application was sustained, the appellants now ask a reversal.

There are several propositions presented for consideration, but only one is material to this discussion. This relates to the method of assessing benefits in the district: that is, whether or not all the lands in the district, or only appellees' property and that of those similarly situated, were classified as the recipients of the benefits from Lateral A.

Obviously, under the record here presented, the original cost of Lateral A was assessed against certain designated property in the district, including that of appellees. However, such apportionment did not embrace all the lands within the district. To repeat the thought in another way, the cost of Lateral A on the original project was declared, under the classification of benefits established, to affect appellees' and certain other lands adjacent to and in the vicinity of that specific part of the ditch. But that initial classification did not include the remainder of the acreage within the district. All the property in the district was found benefited in some ratio by the main ditch. Nevertheless, as before said, it was not all thus declared to be benefited by the lateral. The costs of the main ditch and the lateral were estimated, incurred, and expended separately; and likewise, assessments to meet those expenses were individually based upon distinct classifications of benefits. No change in the said classification has been made since that time. Therefore, until there is a change, the assessment, if made at all, must be upon the ratio of the original classification. Section 7466 of the 1924 Code provides:

"This classification when finally established shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board for good cause shall authorize a revision thereof."

And Section 7476 continues:

"The classification as finally adopted shall remain the basis of all future assessments for the purpose of said district unless revised by the board in the manner provided for reclassification."

See, also, Sections 7492 and 7494 of the same Code.

Manifestly, the Harrison County board, when authorizing Lateral A's repair, attempted to follow the mandates of the above and foregoing legislation. Such part of the resolution which is material reads in this way:

"Second: That the original classification and apportionment is equitable and that there is no reason to change the same.

"Third: The said drainage district is indebted in the cost of construction and repairs—and current expenses in the sum of approximately $3,512.54, and in order to pay outstanding indebtedness which has been legally incurred it is necessary to levy an assessment upon the lands within said drainage district as established in the sum of approximately $3,512.54 or 73 per cent of the original assessment in said drainage district.

"Fourth: There is hereby levied upon the lands within said drainage district an assessment of approximately $3,512.54 or 73 per cent of the original assessment of benefits (for Lateral A).

"Fifth: The county auditor of Harrison County is directed to extend said tax so levied and assessed upon the lands within said drainage district * * * in accordance with the established classification and in the same proportion that the original cost of construction was levied and assessed in said drainage district, and the county auditor is hereby directed to certify said tax so levied and assessed to the county treasurer to be by him collected."

Plainly, therefore, the board of supervisors did not reclassify the benefits accruing to the lands because of the main ditch or the lateral. If, then, any assessment at all was authorized, it was one made in accordance with the original classification for the improvement of Lateral A, and, as before suggested, only part of the land within the district was included therein. Authorization for assessments to repair may be found in the 1924 Code, Sections 7556 to 7562, both inclusive. Thereupon, the board of Harrison County found its right to initiate the new work on Lateral.A. Yet the assessment, whether for repairs or otherwise, must be made by the board, and no one else, and when thus made, the statutory plan shall be followed. As before suggested, this requires that, until there has been a re-

classification, the original must be used. Resultantly, the auditor and treasurer were confined to the resolution aforesaid. They had no authority except that therein indicated. Any assessment, then, made in disregard of that resolution and the classification of benefits for assessment purposes would be a nullity.

Contention, on the other hand, is made by appellees to the effect that the original assessment was spread against all the land in the district, regardless of its association with Lateral A, and therefore the present tax should be made upon the same basis. Explanation for appellees' claim in this regard may be furnished by considering the improvement's original cost and the allocation thereof between the main ditch and the lateral. Illustration will aid the understanding. $48,638.40 was the total original cost of the entire project, including both the main ditch and Lateral A. Of this sum, approximately $8,800 arose through Lateral A's construction. Notwithstanding those facts, the board of supervisors, in levying the assessment, apparently disregarded the original classification of benefits, and spread about $4,000 of Lateral A's cost over the entire district: that is to say, $4,000 of the expense belonging to Lateral A was subtracted therefrom and added to the cost of the main ditch. Wherefore, the separate classification of benefits belonging to the main ditch and Lateral A was disregarded or overlooked, and an arbitrary distribution of financial outlay was made. Thus, of the total sum of $8,800 rightfully belonging to Lateral A, only $4,854.48 was actually placed upon the lands classified as receiving benefits therefrom. Through this handling of the assessment in disregard of the law requiring the tax to be apportioned according to the benefit classification, appellees profited to the extent of approximately $4,000, as aforesaid. So at this time, when the question of assessment is again brought forth to meet the costs of the repairs, the appellees argue, in effect, that, because an error was made in the first instance, it should again occur. These appellees are apparently confused between assessment and classification. Because of this, they argue that $4,000 of the original Lateral A expense was assessed against the entire district. Following that error, they argue that part of the present expenditure similarly should be spread over the entire district, regardless of the fact that it grows out of Lateral A only, and certain property less than the whole is separately and specifically classified as being

benefited thereby. Clearly, this is not the law. A statutory distinction is made between assessment and classification. For instance, Section 7465 of the 1924 Code declares:

"* * * they [the commissioners] shall begin to inspect and classify all the lands within said district, or any change, extension, enlargement, or relocation thereof in tracts of forty acres or less according to the legal or recognized subdivisions, in a graduated scale of benefits to be numbered according to the benefit to be received by each of such tracts from such improvement, and pursue said work continuously until completed and, when completed, shall make a full, accurate, and detailed report thereof and file the same with the auditor. The lands receiving the greatest benefit shall be marked on a scale of one hundred, and those benefited in a less degree with such percentage of one hundred as the benefits received bear in proportion thereto. They shall also make an equitable apportionment of the costs, expenses, fees, and damages computed on the basis of the percentages fixed."

This classification shall remain the basis for all assessments. Sections 7466 and 7476, supra. Furthermore, Section 7561 of the same Code specifies that the expense for repairing certain open ditches shall be assessed upon the same basis as that of the original cost therefor; while the expense of repairing laterals is to be placed against the land especially affected thereby. Parenthetically, it is to be noted that the repairs contemplated involved the cleaning out of Lateral A, in order to restore its original sufficiency. Associated with the foregoing statutory enactments is Section 7477, which reads:

"When the board has finally determined the matter of assessments of benefits and apportionment, it shall levy such assessments as fixed by it upon the lands within such district * * *."

Assessment, then, is not classification, but rather, it is the act of spreading the cost to be raised according to and in proportion with the classification thereof. When thus considered, appellees' theory is wrong, and the plan adopted by the board and county auditor undeniably must be right. Necessarily, then, it is the duty of the county auditor, within the purview of the

statutes aforesaid, and by virtue of the original classification of benefits, to assess the cost of this repair against the appellees and other property benefited by Lateral A. Beyond a peradventure of a doubt, this was the purpose of the supervisors, as evidenced by said quoted resolution. Mathematical demonstration, as well as the language of the resolution itself, is indicative of this. The amount to be raised at this time is $3,512.54; while the total of the original assessment for Lateral A actually borne by appellees and those similarly benefited was $4,854.48. 73 per cent of that would produce approximately the fund desired. Evidently that was the intent of the county officials, and such purpose was reached in strict accordance with the drainage law.

The board of supervisors manifestly had jurisdiction of the subject-matter, and the auditor and the treasurer, as well, were legally authorized to act. None of these officials, then, was proceeding without jurisdiction. An injunction,  therefore, was not the proper remedy. See Section 7527, Code, 1927, and *Petersen v. Sorensen,* 192 Iowa 471. We do not decide whether or not the so-called Lateral A as a matter of fact is a "lateral," because it was found to be such (after due notice to all concerned) by the tribunal having jurisdiction so to do at the time of the district's organization and classification thereunder for assessment purposes. So, until there is a reclassification, the original must stand.

Wherefore, the injunction should be, and hereby is, dissolved, and the judgment and decree of the district court reversed.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.