STATE OF IOWA, Plaintiff, v. THE BOARD OF DIRECTORS, etc., Defendant.

**Schools:** FORMATION OF CONSOLIDATED DISTRICTS : TERRITORIAL LIMITS.
1  The territory of a consolidated independent school district organized under the provisions of Code Supplement, Section 2794a, can not be reduced to less than sixteen government sections, by taking territory therefrom for the organization of a new consolidated independent district.

**Appeal:** AFFIRMANCE OF JUDGMENT BY OPERATION OF LAW. Upon the
2  equal division of the appellate court a judgment of the lower court is affirmed by operation of law.

*Appeal from Clay District Court.*—HON. D. F. COYLE, Judge.

Tuesday, September 27, 1910.

The facts are stated in the opinion.   *Affirmed.*

*Geo. A. Heald,* for appellant.

*F. F. Faville,* for appellee.

Evans, J.—In form this is an action of mandamus to compel the certification of taxes by the officers of three independent school districts which are named as defendants.   There were answers and cross-bills.   The real controversy in the case is between the defendants themselves. Such controversy involves the conflicting claims of the independent school districts over disputed territory, and incidentally involves the legality of the existence of two of the districts.   The districts originally involved were the consolidated independent school district of Webb, the consolidated independent school district of Herdland, and the consolidated independent school district of Garfield. The case as presented involves the construction of section 2794a, Code Supp., which is as follows:

> Sec. 2794a. Consolidation—how effected:   When a written description describing the boundaries of contiguous territory containing not less than sixteen government sections within one or more counties is signed by one-third of the electors residing on such territory and approved by the county superintendent, if one county, and by the superintendents of each if more than one county, and by the state superintendent if the county superintendents do not agree, and filed with the board of the school corporation in which the portion of the proposed district having the largest number of voters is situated, requesting the establishment of a consolidated independent district, it shall be the duty of said board within ten days to call an election in the proposed consolidated independent district for which they shall give the same notices as are required in section 2746 of the Code and 2750 of the Supplement to the

Code, at which meeting all voters residing in the proposed independent district shall be allowed to vote by ballot for or against such separate organization. If a majority of votes cast at such election shall be in favor of such independent organization, the organization of the proposed corporation shall be completed by the election of a board of electors as provided in section 2795 of the Code, said board to organize on the first day of July following unless that day falls on a Sunday, in which case on the day following. All taxes previously certified shall be void so far as the property within the limits of the consolidated independent district is concerned, and all taxes necessary for the new corporation shall be certified and levied as provided in section 2796 of the Code, but no school corporation from which territory is taken shall, after the change, contain less than four government sections, which territory shall be contiguous and so situated as to form a suitable corporation.' When it is proposed to include in such district a town, city, or village, the voters residing upon the territory outside of the town, city or village shall be entitled to vote separately upon the proposition for the formation of such new district by presenting a petition of at least twenty-five percent of the voters residing upon such outside territory, and if a majority of the votes so cast is against including such outside territory, then the proposed independent district shall not be formed.

In 1908 proceedings were had in pursuance of the section quoted to organize the consolidated independent district of Herdland. And all the provisions of such section were literally complied with. Such district so formed included seven and one-half sections of the territory of the pre-existing district of Webb, and reduced the territory of the district of Webb to twelve and one-half sections. There was a purported organization of the district of Garfield, which took a section and a half from the pre-existing district of Webb, and further reduced its territory to eleven sections. On the trial below, however, it appears to have been conceded that the district

of Garfield was illegally organized, and that its proceedings were ineffective. It suffered judgment to go against it below, and it has not appealed. We have only to consider, therefore, the conflicting claims of the districts of Herdland and Webb. The following plat shows the claimed boundaries:

The territory in dispute consists of sections 1, 2, 3, 10, 11, 12, and a part of sections 13, 14, 15 in the civil township of Herdland. As already stated, the proceedings purporting to organize the independent district of Herdland were had in strict accord with section 2794a, Code Supp., and were in all respects legal unless such proposed district was precluded from including within its proposed boundaries seven and one-half sections of the territory of the pre-existing district of Webb. The issues were so framed as to present for the consideration of the court this one question alone. That an independent district organized under this section may include a part of the territory of pre-existing independent districts is conceded. But it is contended on behalf of the district of Webb that the territory in question could not be taken away from it because it was itself organized

in the year 1907 under this same section of the statute, and that the effect of the taking of this territory would be to leave to the district of Webb less than sixteen sections, and that the statute in effect guarantees to it a continuing territory of not less than sixteen sections. It appears from the evidence that, after its organization in 1907, the district of Webb incurred expense in the building of a schoolhouse and otherwise, and levied taxes therefor, and that it has a school population of one hundred and thirty-five children. The question presented, however, is one wholly of statutory construction, and we can not be much aided therein by evidence along the lines indicated.

The controversy presents no middle ground. We must dispose of it with a "yea" or a "nay." There is much to be said for and against both sides of the controversy, and an unqualified finding in favor of either is unsatisfactory. The statute has manifest need of amendment at this point. It was the view of the trial court that the district of Webb was entitled to maintain its territory, and that the district of Herdland was therefore illegally organized, and decree was entered accordingly. The argument in support of this view is that the section in question was enacted for the purpose of enabling the organization of a larger independent district in rural communities. Such larger unit is referred to in the statute as a "consolidated independent district." It is argued that such proposed consolidated independent district could appropriate the territory of other independent districts down to a minimum limit of four sections, but that, when such consolidated independent district is itself formed, its own territory can not be thus appropriated beyond a minimum of sixteen sections. If this be not so, it is manifest that such a district once organized will at all times be subject to disintegration down to four sections by the inclusion of its territory in new districts subse-

quently formed. This is the strong point in the argument. Concededly it is desirable that when an independent district is once organized and incurs expense, and levies taxes in pursuance of the purpose of its organization, there be as much stability in such organization in its territory and boundaries as is consistent with the public interest.

Prior to the enactment of the section in question, the existing statute already provided for various forms of school district organization. There was (1) the subdistrict and school township plan; (2) the rural independent district; (3) the town and city independent district. The enactment of section 2794a added a fourth plan. It did not dispense with the others. No previous section was repealed. The new statute was enacted as an additional method. All these statutory methods are provided subject to the choice of local authorities and electors. In construing, therefore, the implications of the new section, we can not ignore the other sections of the statute on the same general subject. By an examination of the various sections of this chapter of the Code, it will be observed that great liberality has been provided, not only for the organization of school districts by different plans, but for the change of such plan of organization, and for the change of boundaries and territory from time to time as the wisdom of the hour might demand. For instance, section 2791 provides for the separation of territory from one corporation and attaching it to another under certain circumstances. Section 2792 provides for a restoration of territory previously detached. Section 2793 provides for the change of boundary lines of contiguous independent districts. Section 2797 provides for changing a school township organization into a rural independent district organization. Section 2798 provides for the dividing of independent districts into two or more. Section 2799 provides for uniting independent districts. Section 2800

provides for uniting rural independent districts into a school township. And the section under consideration (2794a) clearly contemplates that the territory of preexisting school corporations may be included within the proposed boundaries subject only to the limitation that such pre-existing school corporation shall not be reduced in its territory below four sections.

The question then is: Does this proviso apply to the school corporations which are organized under this section? To put it in another way, is the independent district of Webb subject to the proviso of the section under which it was incorporated? Can we say that a district organization under this section has an open door to appropriate territory from all other districts, but that, when it is once organized, the door is closed against the appropriation of any of its territory or the change of its boundaries? We think it must be said that, unless its territory may be taken subject to this proviso, then there is no provision for changing boundaries of this kind of a district at all. Counsel for appellee concedes in his argument that its territory may be taken down to a minimum limit of sixteen sections; but this concession is gratuitous. There is no basis for it in the statute. As a part of the argument, it serves to cover the weak spot in appellee's case. It is one of the conditions of the initiative in proceedings for the establishment of a district of this plan that the petition therefor shall describe not less than sixteen sections. Undoubtedly the proposed district must contain sixteen sections or more in its original organization. Whether after its organization it shall be subject to future revision depends upon the applicability of that proviso of this section that "no school corporation from which territory is taken shall after the change contain less than four government sections." If this proviso is applicable to an organization under this section, then the territory of such district may be reduced to four sections by complying with the methods pointed out in this section

of the statute. If this proviso is not applicable, then there is no provision whereby any change can be made in the boundaries of such district after its organization. We are confronted, therefore, with the alternative either to hold that the boundaries of such a district are unalterable, or else that the territory of such a district is subject to appropriation by a new district upon the same conditions as apply to any other district and to a minimum limit of four sections.

If we should hold that the boundaries of an independent district organized under this section are irrevocably fixed by its act of organization, then the territory of the various townships might be taken up in a very irregular way by successive corporations organized under this section, leaving small districts here and there organized under previous sections and reduced to four sections by the appropriation of their territory. Necessarily the boundaries of such small districts would become unchangeable also because they could not be changed without changing the boundaries of the larger districts. A district once formed might prove wholly impracticable, and it might well be deemed advisable to reduce its territory and to lay other boundaries, and to organize other districts to meet the then needs of the locality. It is urged with much force that fair construction of this section of the statute requires us to hold that the boundaries of a district organized thereunder are not unalterable, but that they may be changed by the method and subject to the limitation therein provided. Under this section, a petition which proposes to appropriate the territory of any other district must have the approval of the county superintendent as a condition precedent. It is argued that this is not a great safeguard, and that a county superintendent may act with little deliberation or judgment. It is also argued that the county superintendent in the present instance did so act without deliberation

or judgment. We are impressed with the suggestion and can well believe that additional safeguards ought to be provided, and that it were better if the statute provided for notice to interested parties and a hearing before the superintendent, and perhaps a majority vote of the electors of the territory proposed to be segregated. But these suggestions all go to the improvement of the statute, and are for legislative consideration only. It is said that the voters who favored the organization of a larger district might not have voted in favor of the organization of a smaller district of four sections, and that the effect of reducing their territory to four sections is to force upon them a corporation which they would not have organized at all. This same argument would forbid the reduction of the territory of any district, either to the basis of sixteen sections or four sections. The district of Webb consisted of twenty sections. A majority of the voters in twenty sections voted in favor of its organization. It does not follow that the majority of voters in any sixteen sections voted for such organization, or that they would have voted in favor of a sixteen section corporation. In *School District v. Kelley,* 120 Iowa, 119, it was held that an independent district organized under section 2794 and including a village could appropriate the territory of a pre-existing independent district even to the extent of reducing such district to less than four sections.

As presenting the other view, it is to be considered that the statute in question was enacted to meet the demand for authority to consolidate small county districts into a single large one. This manifest purpose naturally calls for such reasonable construction of the statute as will effectuate it. This gives much force to the argument that the provisions of the statute which permit the change of boundaries so as to reduce the area of an organized district to a minimum of four sections is applicable only

to the other forms or kinds of district, and is not intended to permit encroachment to such extent upon a consolidated district duly created. The members of this court are equally divided in opinion as to which view should prevail. This divided opinion must result in an affirmance of the order of the lower court by operation of law. In such a case we usually announce the result without opinion. We depart from the custom in this case in order that the difficulties presented by the statute in its present form may be brought more readily to the attention of the Legislature. We are united in the opinion that neither construction contended for is satisfactory, and that either presents grave difficulties, and that the statute ought to have the further consideration of the Legislature.

The order of the trial court will therefore be affirmed by operation of law.—*Affirmed.*