B. E. LINCOLN et al., Appellants, v. W. M. MOORE et al., Appellees.

**DRAINS:** Establishment—Estoppel by Acquiescence. Active acquiescence for 20 years, by all landowners within a drainage district, in the legality of the organization of the district, works an estoppel on any *portion* of the landowners to question such legality to the detriment of the remaining landowners.

*Appeal from Mills District Court.*—O. D. WHEELER, Judge.

JUNE 22, 1923.

ACTION in equity by plaintiffs, appellants, brought to enjoin the board of supervisors, the treasurer, and the auditor from approving the report of the engineer and from doing any further work, either repairs or otherwise, or levying any tax, in what is known as the Pony Creek Drainage District. Appellants' principal contention is that the defendant drainage district was never legally established, and that, therefore, the action of the board of supervisors in February, 1922, ordering the cleaning out and repair of the drainage ditch, was without any basis: in other words, that the entire proceedings are void. Constitutional and other questions are also relied upon. Appellees contend that the district was legally organized by proceedings had about 1902, and later, under a curative act by the legislature; that plaintiffs by their laches, failure to object or appeal, and acquiescence, are estopped to now say that the district has not been established, and that the order for repairs was without authority. They also contend that plaintiffs' remedy is by appeal, and not by injunction. The facts and issues will be more fully stated in the opinion.

This case is closely related to the case of *Vinton v. Board*

*of Supervisors,* 196 Iowa —, which was submitted at the same time.  Indeed, the appellants frequently refer to the proceedings of the board of supervisors in the *Vinton* case, in their argument of this case, and it is referred to in different ways.  Some of the contentions herein are that the action of the board of supervisors in the *Vinton* case is a basis or reason for claiming that the action in this case is void.  The *Vinton* case was an appeal to the district court from the action of the board of supervisors in refusing to establish or relocate the ditch in the district, and the appeal to the district court was dismissed on motion of defendants.  The action of the board from which the appeal was taken, was had a short time before the action ordering the repair of the old ditch.  But both relate to the same subject-matter, and the application to repair was in the nature of an amendment to the petition to relocate, so that both were pending at the same time, and were, in a sense, the same proceeding; and therefore the determination of the instant case governs, to some extent, the determination of the other case.  The trial court, after full trial, dismissed the plaintiffs' petition, and the plaintiffs appeal.—*Affirmed.*

*Roadifer & Roadifer* and *W. S. Lewis,* for appellants.

*Genung & Genung, C. H. Cook,* and *C. E. Dean,* for appellees.

PRESTON, C. J.—To a better understanding of the case and the claims of the parties, we shall state a summary of the plaintiffs' petition.  It is alleged that plaintiffs are residents of, and own lands sought to be included in, what is known as the Pony Creek Drainage District; that the work sought to be done by the board is not a public work, in that the board by resolution (January, 1922, from which, in the *Vinton* case, the appeal was taken) determined that as to these lands it was not conducive to public health, convenience, welfare, or public benefit, to drain the same; that, immediately following the legislative act of the board aforesaid, the board ordered certain repair work done on what is known as the Pony Creek Ditch, and let a contract therefor; that, after it was determined, as a matter of law, that the work now sought to be done was not for public benefit, it is a

violation of the Constitution of Iowa and of the United States to do this work and assess the cost against the land. It is further alleged that said work cannot be done as repairs of the Pony Creek district, because the district was not legally established. The alleged failures to comply with the law, stated in substance, are that, on September 6, 1902, a petition and bond were filed, under Section 1940, Code of 1897, Chapter 2, Title X; that, on November 12, 1902, a second petition, without bond, was filed; that the auditor failed to place a copy of the petition in the hands of the engineer; that no survey and no plat and profile were returned to the auditor, setting forth a detailed description, and the advisability, necessity, and probable cost of the improvement, with a description of each tract owned by different persons through or abutting upon the improvement; that the auditor failed to cause notice in writing to be served on the owners of each tract of the pendency of the petition and the day of hearing; that no day of hearing on the petition was fixed, and no hearing on the necessity or damage was ever had under the petition; that, in November, 1902, the board appointed a commission to classify the lands for the benefits, and said report was approved; that, in February and March, 1903, a contract was let for certain work, without first establishing or adopting any resolution establishing a drainage district; that, in November, 1904, the classification above specified was canceled, and a new commission appointed to classify the land, and a day was fixed in December, 1904, for hearing, and notice was served on all landowners, without first establishing a drainage district or including any lands therein; that, in February, 1905, said classification was set aside, and a new apportionment adopted, but that no notice thereof was ever given, and on the same day, a tax was ordered levied upon the lands included in said classification; that, in December, 1907, a repair tax was ordered levied, upon the same ratio, without notice; that, in August, 1908, an engineer was appointed by the board to recommend certain repair work on the improvement constructed, but no petition was filed, as provided under Sections 1989-a1 to 1989-a25, Code Supplement, 1913, asking for such improvement work or repairs, or asking for the establishment of a drainage district, and the board, without any petition or bond, appointed

said engineer, who, later in the same month, filed a report, but no day of hearing was given on the establishment of such improvement work, as recommended; that said report recommended a levee system and ditches not before constructed, which was a separate and distinct improvement from that originally constructed in 1902, and was not a part of such construction work as could have been constructed as a part of the original improvement, had that improvement been established as a drainage district; that, without any order establishing a drainage district or notice of hearing thereon, and without a petition, the board of supervisors, on August 28, 1908, ordered a commission appointed under Section 1989-a12, Code Supplement, 1913, to classify certain lands and apportion the sum of $8,797.47; that the commission reported, and a notice of hearing on assessment was served on landowners within the boundaries of the district, as shown by the engineer's report; that, on November 2, 1908, the classification of the commissioners was adopted, but the boundaries of the district were changed without any recommendation by the engineer, excluding certain lands from the district; that no classification of benefits has ever been made in the district, except as aforesaid; that the defendants are acting wholly without authority of law, for the reason that the original attempted establishment of the defendant drainage ditch failed, because the law under which it was sought to establish the said district was unconstitutional and void, and no notice of hearing on establishment was ever given, and no resolution of necessity was made, and no plan and profile of the improvement, and no resolution establishing the district, and no notice of assessment of benefits; and that, by reason of all the facts alleged, no district was ever established, etc.

We take it that what appellants really mean by the foregoing allegations, or some of them at least, as to failure to file a petition, deliver it to the engineer, give notice, and so on, is that the record does not show these things. A different aspect is presented when we consider what was really done, and the reasons therefor, which show, we think, that there was a fair attempt by the officers to comply with the law, and to rectify, under a curative act by the legislature, any mistakes that had

been made, and which show acquiescence on the part of these plaintiffs and all the landowners in the district.

After the first petition was filed, in 1902, under the original drainage acts, some of the things had to be done over again, because of the holding of this court as to the unconstitutionality of certain parts of the original drainage law. Thereafter, under an act by the legislature, notice was given, and other proceedings authorized under such act were had.

Going back again to the petition filed with the county auditor in November, 1902, for the establishment of a drainage district to be known as the Pony Creek Drainage District, it appears that the petition was filed by every one of the property owners whose property abutted upon the drainage improvement, and through whose property it passed; and the petition recited that the signers thereof, "being all of the owners of the land through which the improvement would run, consented thereto, and waived all claims for damages thereby." This petition and the record were produced, and introduced in evidence. The board, acting upon said petition, made a record which was indorsed thereon, whereby they accepted the route of the ditch and, adopting it, accepted the grant of right of way. This was in December, 1902. It is contended by appellees that serving notice would not have added anything to the waiver signed by all the landowners, and that such consent and waiver obviated the necessity of any notice under the then existing law, Section 1940, Chapter 2, Title X, of the Code. The portion of said section referring to notice is as follows:

"The auditor shall immediately thereafter cause notice in writing to be served on the owner of each tract of land *through* or *abutting* upon which the proposed improvement is to be located."

Without stopping to discuss the question whether the notice was obviated by the waiver, it is enough now to say that it has a bearing upon the question of knowledge and acquiescence, which will be referred to later in the opinion.

The civil engineer who made the survey of the district in 1902 testifies that he had the original petition before him and with him at the time he made the survey; that he made a plat and profile and specifications of the proposed ditch, and filed

them in the office of the auditor; that he is unable to state from memory whether he filed a report and recommendation in 1902 or not; that he was one of the commission appointed to assess benefits in 1902. Witness further says that some of the territory was stricken out of the district when the assessment of 1908 was made; that the starting point of the ditch was the same then as that of the present ditch, and the outlet was the same; that there was some change in the first ditch and the ditch of 1908 in one section, and at the railroad bridge. Witness also says that it is his recollection that the ditch was constructed according to plans and specifications which he had furnished the board of supervisors. Witness further testified that the boundaries of the district, as shown by a map dated in 1905, were the same on the establishment of the ditch as they now are.

In 1904, this court, in *Beebe v. Magoun*, 122 Iowa 94, held the statute, Chapter 2, Title X, of the Code, to be unconstitutional, for want of notice to the various persons whose lands would be taxed to pay for the improvement. The legislature, being then in session, passed Chapters 67 and 68 of the Acts of the Thirtieth General Assembly. The purpose of these acts was doubtless to save the various drainage enterprises which had been entered into and partly constructed, or constructed and partly paid for. Under this record, we think it is shown that the board of supervisors did all that was required, under Chapter 67, to remedy the defects which had gone before. The assessment that had been made was recalled, and the benefits were reascertained and reapportioned by new commissioners appointed by the board to reascertain and reapportion the same. A time was set for hearing on the commissioners' report, and a relevy and reassessment made, after all persons interested and owning land in the district had been served with notice, as required by law. After the holding in the *Beebe* case, the board, in November, 1904, ordered that the tax levied be recalled, and that the cost and expense of the improvement be reascertained by a new commission. The new commission, appointed November, 1904, filed an extended report; the board then fixed a day; and notice was served, as before stated.

It is contended by appellees that Chapter 67, before referred to, is a curative act, and that it was so held in the *Smittle* case,

140 Iowa 492; and further, that prior proceedings had been cured by the language of the act itself, except as to the reapportionment and relevy which we have just referred to. We shall not take the space to state in detail the proceedings had after the decision in the *Beebe* case, and the curative acts.

It is further contended by appellants that, up to 1908, no district had been established, and they say that, if any drainage district was established, it was in 1908. They refer at some length to the proceedings had in 1908, and contend that, by the acts of the board in that year, no district was established. It appears that, among other proceedings had in 1908, a petition was filed before the board for a new Pony Creek ditch, but that the petition was denied. In the view we take of the case, we do not deem it necessary, as to 1908 proceedings, to go into further details. It appears that, in 1908, the board passed certain resolutions in regard to reopening and straightening the old ditch; that there were some changes made in the ditch itself. It is claimed that there were certain defects in the proceedings, so that it could not be claimed that the ditch was legally established at that time.

It should have been said that, after the proceedings in 1902 and thereafter, bonds to the amount of $40,000 were issued, and assessments made and paid. The bonds have since been paid. For more than 20 years, a ditch, with dikes and embankments, has been used, and known as the Pony Creek Drainage District, upon which taxes have been assessed and paid annually. During all this time, the district has been recognized as an established district. All the property owners in the district, including the plaintiffs, have paid their taxes assessed therein, without protest. During these years, with the knowledge of the property owners within the district, including appellants, the board has exercised jurisdiction over the district and improvement therein, with the full knowledge and acquiescence of all parties. All the property owners, including appellants, have paid their assessment of taxes for the construction and maintenance of this ditch. In all the proceedings of the board from and after 1902, neither these appellants nor any other property owner in the district appealed from the action of the board, or objected thereto, or in any manner contested such action. The ditch is

approximately four miles long. Doubtless, lands in the district have changed hands, and the price thereof has been fixed with reference to the ditch and the district, and in reliance thereon. To now remove the ditch two miles west, but within the same district, as petitioned for in the proceedings begun in September, 1921, which will be referred to in a moment, would operate to the disadvantage of the property owners in the eastern part of the district.

It is conceded by appellants in argument that the action of the board of supervisors in January, 1922 (in the *Vinton* case), to be referred to in a moment, ''was taken with reference to a proposed district for boundaries identical with what had been known as the Pony Creek Drainage District, and affected the same identical territory as that to be assessed for benefits under the resolution (February, 1922) for repair work, of which we now complain.'' It is alleged in the answer in this case that the *Vinton* petition was for the establishment of a new district, with boundaries identical with the existing Pony Creek Drainage District, but asking for a different location of the improvement within said district. The boundaries of the district were described in the earlier proceedings. We understand from this, and from the record, that, in the *Vinton* case, the petition was for the same district, but asking that the ditch, for a part of the way at least, be located or relocated about two miles from the present ditch. The old ditch and the one proposed begin at practically the same point, and empty into the Watkins ditch, close together.

We have not attempted to give all the details and everything that was done. To go into further detail would unduly prolong the opinion. We have attempted to give the more important circumstances bearing upon the question of acquiescence and estoppel.

Going back now to the immediate proceedings of the board of supervisors upon which these two cases are based, it appears that, in September, 1921, Vinton and others filed a petition and bond for the establishment of a new district. An engineer was appointed September 29, 1921. The engineer filed a report recommending new improvement work, and set out lands benefited, which included the lands in Pony Creek Drainage Dis-

trict, as heretofore assessed. Notice of hearing on establishment was given. In January, 1922, the board of supervisors adopted the following resolution:

"This being the time fixed for a hearing on the petition of S. F. Vinton and others, asking for the establishment of a drainage district, as set out in said petition, the board takes up the question as presented by the petition, and after viewing the premises described in the petition, and after hearing the arguments presented by the petitioners, and after hearing the arguments from those opposed to the petition, and after considering the objections filed with the county auditor, amounting to about $267,000, and after considering all matter bearing on the question presented by the petition, finds that said petition, in substance, asks for a relocation of the old Pony Creek ditch, directly to the west of the *proposed* new ditch, and the purpose of the same is to drain the lands now sought to be drained by the now existing Pony Creek ditch; that, because there would be *no benefit* derived from the *new* ditch which *does not at this time* accrue to the present Pony Creek ditch, and the board, after considering the report of commissioner Seth Dean, and the matters above set out, and all other matters, finds that the levy of the drainage district, as proposed in the petition of S. F. Vinton and others, would not be for *public benefit* or utility, nor conducive to the public health, convenience, or welfare. Be it therefore resolved by the board of supervisors, after considering all the matters hereinbefore set out, that the petition of S. F. Vinton and others be and the same is hereby dismissed," etc.

From this action by the board, Vinton and others appealed to the district court, and, as before stated, the appeal was dismissed, on motion of the defendants. After the Vinton petition was filed, and before it was acted upon, as just stated, and while that matter was still pending, other landowners in the district filed what they denominated an amendment to petition, asking that the old ditch be cleaned out, repaired, etc. On February 27, 1922, the board of supervisors, acting upon said so-called amendment, adopted the following resolution:

"The board of supervisors of Mills County, Iowa, being in regular adjourned session, with all the members present and acting, takes up for further consideration the matter of the Pony

Creek Drainage District heretofore established by the board of supervisors of Mills County, Iowa, September 14, 1908. And it now appearing to the board of supervisors, by their own personal inspection and by petition, that the Pony Creek Drainage District is out of repair, that the same has become filled and otherwise rendered unserviceable, and the board finds out that the ditch should be cleaned out, repaired, deepened, and widened, to conform to the original specifications, and that the levees be repaired. Therefore, be it resolved by the board of supervisors of Mills County, Iowa, working under Section 1989-a21, Supplement, 1913, Seth Dean, a civil engineer, make plans and specifications and estimates of the cost of repairing, widening, and deepening said Pony Creek ditch, and that the county auditor of Mills County, Iowa, advertise for bids for said work, according to plans and specifications filed by Seth Dean, drainage engineer for Mills County, Iowa, said advertisements for bids to be inserted for one week in some contractor's journal, said contract to be let on the 10th day of March, 1922. And be it further resolved by said board that the costs of said repairs, cleaning out, deepening, and widening shall be assessed against the lands and property in said drainage district, as provided by the drainage law of Iowa.''

On March 8, 1922, notice to contractors was given. Objections were filed by the Chicago, Burlington & Quincy Railroad. Objections were also filed by S. F. Vinton and another. On March 24, 1922, the board took up for consideration and further business, in connection with the substitute petition for cleaning out the present ditch, the objections of the railroad company and objections by Vinton and others for letting the contract on the old ditch. Bids were received, one of which was accepted, and the chairman of the board and the auditor were empowered to sign a contract for the work. No appeal was taken from the action of the board of February 27 and March 24, 1922. This injunction suit was begun June 23, 1922.

1. Appellants do not point out the particular provisions of the Federal and state Constitutions under which it is contended that the drainage law is unconstitutional. Appellants' proposition, as they state it, is that, the board having, by a legislative act, determined that it is not conducive to public

health, welfare, and convenience, and not a public benefit, to drain these lands, no further work can be done, for the reason that such requirement is necessary to the constitutionality of the drainage law. Appellants, at different points in their argument, stress the thought that the board of supervisors, by their action in the *Vinton* case,—that is, the resolution of January, 1922,—determined that to drain these lands was not a public benefit, etc., quoting the language used by the board in their resolution. While the language quoted is contained in the resolution, we think that this is not a fair interpretation of it. It is clear that the petition of Vinton and others was denied because the board found ''that said petition in substance asks for a relocation of the old Pony Creek ditch directly to the west of the proposed new ditch, and the purpose of the same is to. drain the lands now sought to be drained by the now existing Pony Creek ditch; that there would be no benefit derived from the new ditch which does not at this time accrue to the present Pony Creek Ditch;'' and for this reason it would not be for the public benefit, etc.; in other words, that the old ditch, if cleaned out and repaired, would be a public benefit, conducive to health, etc.; and that there would be no necessity for another ditch, and no necessity for relocating the old ditch. This is quite a different matter from saying that drainage does not benefit lands. This, we take it, is the basis of appellants' contention that the drainage law is unconstitutional and the acts of the board void. Furthermore, it is the well settled rule that the courts will not declare an act unconstitutional unless it is necessary to do so. We are not disposed to go back 20 years, where all parties interested have acquiesced in these proceedings, to search for something upon which to declare a law or act to be contrary to the Constitution. *Thompson v. Mitchell,* 133 Iowa 527; *Smittle v. Haag,* 140 Iowa 492. It is conceivable that a situation might arise where a party failing to raise a constitutional question at the proper time and in the proper way may be held to have waived his right to thereafter raise the question. As bearing somewhat upon this proposition, see *State v. Ross,* 186 Iowa 802. We are of opinion that the contention of appellants at this point is without substance.

We may observe here, in passing, that appellants, in their

petition in the instant case, and in argument, contend strenuously that the action of the board of supervisors in passing the resolution of January, 1922 (appealed from in the *Vinton* case), was a legislative act; but in the *Vinton* case, wherein appellants are represented by the same counsel, they take the opposite position, that such act is not wholly a legislative act. The argument in the instant case is that the finding of the board that the petition should not be granted, or the district established, ''because not conducive to public health, and not a public benefit,'' is a legislative act; that such finding determines, as a matter of law, as to that territory, that drainage work affecting such territory is not a public work; and that, this law having been once enacted, further drainage work would be in violation of both the Constitution of Iowa and the Constitution of the United States. But in the *Vinton* case, it is contended that the action of the board in January, 1922, is not a legislative act, but is partly judicial, and that they were entitled to a review, on appeal to the district court, under the claim that the case of *Denny v. Des Moines County*, 143 Iowa 466, is modified or qualified in our later cases. No criticism is intended by referring to the fact that inconsistent positions are taken. It is sometimes necessary, and it is a right which counsel have.

2. We are of opinion that appellants have not shown that the old drainage district was not legally established, or that the proceedings were entirely void. It was, for more than 20 years, considered by all interested parties as established, and all parties acted as though it had been. The drainage district is made a party defendant to this action by the appellants, thus, in a sense, even now recognizing it as an established district. It may be conceded that there were some irregularities in the proceedings. Perhaps it would be better to say that, after the lapse of time, the difficulty lies in proving what was, in fact, done. Surely, it would not be improper, under the circumstances, to say that the presumption of regularity, and that the officers did their duty, should apply, and be given some force. While the record of the board at the beginning may not show all the proceedings had, it must be remembered that, at that time, the law did not require that the record show all these things. This being so, some of the papers referred to may have been mislaid

or lost. It may be conceded that the attempts of the officers were somewhat crude, and that the record kept by the board, as now presented, does not show everything that was done. Other proof thereof was introduced. Furthermore, we have said that the members of such inferior boards are inexperienced, and that they will not be held to absolute exactness in reference to their proceedings. *State v. Hall,* 190 Iowa 1283, 1290. In any event, we think that appellees' contention that appellants are estopped to now say that the district was not legally established, is well taken. All landowners in the district, including appellants, having for so long a time considered the district as properly established, assented thereto, acquiesced therein, acted upon such belief, paid taxes, and expended money in reliance thereon, with full knowledge of all the facts, appellants ought not to be now permitted to change their position to the disadvantage of other landowners in the district. It seems to us that this applies with especial force to those landowners whose lands would be two miles farther from the drainage ditch, if it were held that the proceedings in regard to the old ditch are void, and a new district established and a new ditch relocated, two miles away. Without a review or discussion of the cases, we think that the following sustain our holding: *Thompson v. Mitchell,* 133 Iowa 527; *Smittle v. Haag,* 140 Iowa 492; *Mackay v. Hancock County,* 137 Iowa 88; *Kelley v. Drainage District,* 158 Iowa 735; *Chicago & N. W. R. Co. v. Board,* 182 Iowa 60. See, also, *State v. Kinkade,* 192 Iowa 1362; *State v. Hall,* 190 Iowa 1283. In the last cited case, at page 1290, we said, in regard to the organization of school districts, that interested parties ought not to be permitted to stand by and see the organization completed, elections held, and other matters referred to done (citing *Nelson v. Consolidated Ind. Sch. Dist.,* 181 Iowa 424, 432; *State v. Board,* 148 Iowa 487, 492). See, also, 21 Corpus Juris 1202, 1216 *et seq.*

It is appellants' contention that they cannot be estopped from questioning a void tax, and that no estoppel can be found against appellants for a new and independent wrong. Cases are cited in support of these propositions, but we think they are not applicable to this case. The question as to whether the taxes were void is now of slight importance. If the district was legally

established, or if appellants are precluded from raising that question, it cannot be said that the action of the board in proceeding to clean out and repair the old ditch was a new and independent wrong. All statutory provisions were complied with, so far as they relate to the actions of the board in 1922.

3. Appellees contend that, since the district was legally established, appellants' remedy was by appeal, and that such remedy is exclusive. On this proposition they cite Section 1989-a46, Code Supplement, 1913; *Lightner v. Greene County*, 145 Iowa 95; *Peterson v. Sorensen*, 192 Iowa 471, 479. There may be force in this contention; but, since we have reached the conclusion that the case ought to be affirmed on other grounds, it is unnecessary to discuss this feature of the case.

Without further discussion, we reach the conclusion that the judgment of the district court ought to be affirmed. It is— *Affirmed.*

EVANS, FAVILLE, and DE GRAFF, JJ., concur.