Chris Christensen, Appellant, v. W. E. Agan et al., Appellees (and two other cases).

No. 39631.

1316

April 14, 1930.

*Byron Clark, Jesse E. Root, J. W. Weingarten, H. E. Kuppinger,* and *D. E. Whitfield,* for Chicago, Burlington & Quincy Railroad Company, appellant.

*DeVere Watson,* for Chris Christensen and B. E. Lincoln, appellants.

*Genung & Genung, C. E. Dean,* and *Cook & Cook,* for appellees.

*John Fletcher*, Attorney-general, *Gerald O. Blake,* Assistant Attorney-general, *Cook & Cook, C. E. Dean,* and *Genung & Genung,* for Board of Control of the State of Iowa, intervener and appellee.

KINDIG, J.—The three appeals taken from the action of the Mills County supervisors to the district court by the respective plaintiffs and appellants, Chris Christensen, B. E. Lincoln, and Chicago, Burlington & Quincy Railroad Company, a corporation, were consolidated for trial purposes. Each appeal presents the same issues and facts. Consequently, one opinion is sufficient to cover all three of them.

There are involved here, generally speaking, appellants' complaints: First, because the supervisors did not establish the drainage district petitioned for by them; and second, because the supervisors hired attorneys and engineers, and assessed the expenses therefor to the appellants. For a proper understanding of those issues, a preliminary statement of facts is essential.

Pony Creek in Mills County, flowing in a general southwesterly direction, empties into the Missouri River. This creek is an intermittent stream, and goes dry during certain portions of the year. Immediately to the east of the creek is a range of precipitous and abrupt hills, the drainage from which flows to the west, carrying silt and deposit on the level lands into the stream beyond. Keg Creek, in 1878, flowed northwesterly into Pony Creek. It being a live stream, it is said by appellants that the waters from Keg Creek caused a sufficient flow after they entered Pony Creek to wash the debris and silt from the channel. Then, in 1879, the waters of Keg Creek were diverted from the former course, and caused to flow into what is known as Watkins Ditch (an improvement in the Watkins Drainage District), thus entering Pony Creek near the Missouri River, and thereby depriving the last-named creek of the active waters which it previously received from the first-named creek several miles farther up the stream.

In 1902 or 1903, the Pony Creek Drainage District was established, and the main ditch therein extended from the northeast to the southwest, and finally emptied into Watkins Ditch. See *Lincoln v. Moore,* 196 Iowa 152, and *Vinton v. Board of Supervisors,* 196 Iowa 329. Appellants became dissatisfied with

the drainage situation within the Pony Creek district, and on or about August 1, 1927, duly filed their petition for the establishment of a new drainage district. Among the improvements contemplated in the new ditch was a proposed Pony Creek

lateral, to empty into an extension of Watkins Ditch. According to the petition, 10,939.4 acres of land are embraced within the proposed new district. Two drainage districts are already in existence. As before suggested, they are the Pony Creek and Watkins. A plat showing those ditches and the proposed new district with the suggested lateral appears herewith.

Practically all the land in the contemplated new district is already contained within the existing districts. But appellants insist that the existing improvements are not sufficient, because the water overflows from the Missouri River and fills up the Pony Creek ditch, thus causing silt to deposit over considerable portions of the ditch, so that the flood waters inundate the cultivated fields. To avoid this difficulty, appellants propose to carry the combined floods of Pony Creek and Watkins Ditch into the Missouri River, at a grade which will permit the scouring of the ditch's channel and prevent backwaters from the river.

Those of the appellees who are landowner objectors contested the sufficiency of the contemplated improvement on the basis of three complaints: First, that the carrying capacity is not sufficient; second, that the lateral extending along the hills will collect and hold all the silt and debris washed down during the floods, and thereby cause obstructions to the water; third, that the existing drainage districts are sufficient in their operations to take care of all ordinary floods; and fourth, that the improvement would not be conducive to the public health, benefit, utility, etc. After due consideration, the board of supervisors, by a resolution, rejected the project.

At the outset, the appellees maintain that the board disapproved the proposition because the improvement was not "conducive to the public health, benefit, and utility," and therefore

 their action, being legislative in its nature, is a finality, and cannot be inquired into by the courts. Replying to that proposition, appellants insist that the board rejected the new district on the theory alone that the old improvements were sufficient. Hence they say a judicial question is presented.

I. If the action of the board amounted to a finding only that the new district would not be "for the public benefit or

utility, or conducive to the public health, convenience, or welfare,'' the courts cannot interfere therewith. Such action on the part of the board is legislative in character, as distinguished from judicial. *Denny v. Des Moines County,* 143 Iowa 466; *In re Nishnabotna R. Imp. Dist.,* 145 Iowa 130; *Vinton v. Board of Supervisors* (196 Iowa 329), supra. On the other hand, there may be involved in the establishment of a drainage district judicial, as well as legislative, findings. *In re Nishnabotna R. Imp. Dist.* (145 Iowa 130), supra; *Hall v. Polk,* 181 Iowa 828; *Vinton v. Board of Supervisors* (196 Iowa 329), supra; *Thompson v. Board of Supervisors,* 201 Iowa 1099. A discussion illustrative of the thought is the following, contained in *In re Nishnabotna R. Imp. Dist.,* reading on pages 138 and 139:

''What the *Denny* case [143 Iowa 466] really decides is that there can be no appeal to the district court from an order of the board of supervisors finding that a proposed drainage district is not for the public benefit or utility, or conducive to the public health, convenience, or welfare, and a refusal to establish the district on that account. That is quite a different proposition from an appeal by landowners within a proposed district, whose land is to be taxed with the expense of the proposed improvement, from an order of the board establishing such a district, and ordering the improvement made at the expense of the landowners whose lands can only be taken in consideration of benefits conferred. In the one case, no one's property is taken, and no one's possession is disturbed. In the other, his property may be taken, his possession disturbed, and his lands appropriated, for public or semipublic purposes. True, in the latter case, the act of the board of supervisors is legislative, or quasi legislative, in character, but by statute it has some questions of fact to determine which may properly be made the subject of judicial review, before the property of persons interested may be taken or made subject to an assessment tax. * * *''

Thus it is certain that there may be involved in the establishment of the district questions which are not purely legislative. Upon this basis, appellants assert their right to have reviewed the board's action in the case at bar. To put the thought in another way, the appellants argue that the board's conclusion

in denying the establishment of the district was based upon the major premise that the old districts were sufficient. So it is insisted that the sufficiency of the existing improvements, rather than public convenience, welfare, etc., is in fact the subject-matter involved. Therefore, appellants say that the question presented is judicial, and not legislative. Here they rely upon *Lincoln v. Moore* (196 Iowa 152), supra, and *Vinton v. Board of Supervisors* (196 Iowa 329), supra. Those cases involved a resolution which made the basis of the board's finding dependent upon the existence of a sufficient improvement. When reciting its findings, the board, as shown in the *Lincoln* case, supra, used the sufficient existing drainage district as a major premise, and concluded therefrom that the new project was not conducive to public health, etc. Speaking upon that resolution, this court said, in *Vinton v. Board of Supervisors,* supra:

"As shown, the board in the instant case [*Lincoln v. Moore* and *Vinton v. Board of Supervisors*] did not determine, as an abstract proposition, that drainage was not of public benefit."

Further, we stated, during the discussion in the *Vinton* case:

"As we said in the *Lincoln* case, it is not a fair interpretation of the order of the board of supervisors to say that they found that drainage was of no benefit. What they did hold was that, since there was one ditch in the district, it was unnecessary to have another, or relocate the ditch, and lose all the money which had been expended on the old ditch; and they refused the petition of appellants on that ground."

Returning now to the resolution of the board in the present controversy, it is discovered that the phraseology is quite different from that employed by the board in the *Lincoln* and *Vinton* cases. Assuming, without deciding, that in the *Vinton* and *Lincoln* cases the resolution of the board was so peculiar in its verbiage that a finding concerning the public health and benefit was not made, yet in the resolution before us the board found concerning the public health, etc., in such a manner that its conclusion in reference to the sufficiency of the present drainage system was not inconsistent therewith: that is to say, the findings appear to be uncontradictory in their nature.

Necessarily, then, the board's finding in respect to the public health and benefit was legislative, as distinguished from judicial, and therefore we cannot interfere therewith.

II. Nevertheless, appellants further insist that there is no basis for a finding here concerning the public health and benefit, for the reason that such conclusion was officially reached  when the other two drainage districts were established. Pursuing this thought, appellants say that a finding in favor of public benefit and health as it relates to particular land is conclusive for such property during all time. Concerning this logic, serious difficulties can readily be suggested: First, the present district does not, as we understand, entirely conform to the boundaries of the old, although it does nearly so; and second, fundamentally, jurisdiction is obtained in cases of this kind by a legislative finding concerning public benefit, health, etc. Without such conclusion, jurisdiction is lacking. Wherefore, the very basis for the establishment of the new district is that the lands embraced therein, including those portions already within the former district, need drainage, and that the proposed improvement under the drainage law will be conducive to public health and benefit. It is immaterial in this case whether previous similar findings were made on the subject for another drainage district entirely or partially embracing the same land.

A legislative finding, therefore, was essential here, and, performing their duty in that regard, the board refused to establish the ditch district proposed. Consequently, their action is final.

III. Contained within the district court's decree is a finding that the board of supervisors legally employed attorneys and an engineer in connection with the appeal to the district  court, and accordingly, judgment was rendered against the appellants therefor in the aggregate sum of $3,730.90, allocated as follows: Attorneys' fees, $3,130.90; engineer's charges, $600. Such legal and engineering services were rendered solely for the purposes of the appeal from the supervisors' action in refusing to establish the district.

Apparently some time after passing the resolution refusing such establishment, the board of supervisors, by another resolu-

tion, did purpose to hire attorneys and an engineer. Their action in that regard, however, was no part of the original proceedings, which ended when said refusal was made. Relating to this subject are the following sections of the 1927 Code:

"7519. In all actions or appeals affecting the district, the board of supervisors shall be a proper party for the purpose of representing the district and all interested parties therein, other than the adversary parties, and the employment of counsel by the board shall be for the purpose of protecting the rights of the district and interested parties therein other than the adversary parties."

"7520. In all appeals or actions adversary to the district, the appellant or complaining party shall be entitled the plaintiff, and the board of supervisors and drainage district it represents, the defendants."

"7521. In all appeals or actions for or in behalf of the district, the board and the drainage district it represents may sue as the plaintiffs."

"7526. On appeal from the action of the board in establishing or refusing to establish said district, or in including land within the district, the court may enter such order or decree as may be equitable and just in the premises, and the clerk of said court shall certify the decree or order to the board of supervisors which shall proceed thereafter in said matter as if such order had been made by the board. The taxation of costs among the litigants shall be in the discretion of the court."

Manifestly, the board's duty in the premises is to act for the district; if there is no district, there is nothing for the board to represent. Not only is that true, but, when the board does act, its efforts in that regard must be in favor of, rather than against, the district. Obviously that is true, because the legislature desired the protection and maintenance of the district when once established by the board. Whatever was done by the board in the case at bar was against, rather than in favor of, the contemplated district. There being no district for the board to represent, its attempted employment of the attorneys and engineer for the purposes of the appeal was unauthorized, and therefore a nullity. Resultantly, such expense cannot be charged against or taxed to the appellants, and the action of the district

court in attempting to obligate them therefor is erroneous, and is hereby modified to that extent.

Wherefore, the judgment and decree of the district court, as thus modified, should be, and hereby is, affirmed.—*Modified and affirmed.*

All the justices concur.